Fidelity Insurance Company v. Americaribe-Moriarity JV Fidelity Insurance Company v. Americaribe-Moriarity JV  Good morning. May it please the court. My name is Rick Chavez. I'm representing the appellant Americaribe-Moriarity Joint Venture, which I'll call AMJV. The lower court erred in its interpretation relating to an indemnity provision, which by its plain terms is not a prevailing party attorney's fee provision. It doesn't provide for attorney's fees to AMJV for litigation against CPM, the subcontractor. It requires the subcontractor to indemnify against claims brought by third parties against AMJV. It does not apply to suits between those parties, but rather claims by third parties against them. That's typically what an indemnity provision does. Most importantly, it does not unambiguously state that the prevailing party in suits between those two can recover attorney's fees from the other. And when you're dealing with an indemnity provision, strict construction is required. Additionally, the lower court erred because it's clear that the surety, the other party to this appeal, is not a party to the subcontract. The applicable statute which makes one-way attorney's fees bilateral is 57-105, and it only applies when the party seeking fees both prevails and is a party to the contract containing the fee provision. 57-105 as a statute must be strictly construed. 57-105 by itself cannot be used to expand the scope of a fee provision or to convert an indemnity provision into a fee provision. In addition, the sureties never actually performed under the subcontracts, so they didn't step into the shoes of the subcontractor to be subject to the obligations and rights. This court in BVS Acquisition v. Brown, an 11th Circuit 2016 case, looked at the default position under which indemnity clauses are generally enforced and that they're limited to coverage of claims by third parties. And it mirrors the so-called American rule with each party bearing their own fees. This court in the 11th Circuit in Sukar looked at the law that applies and determined that when you have an indemnity provision, courts require that there be a contractual – to have contractual entitlement to attorney's fees. Under an indemnity clause, you must manifest in some clear way an agreement to reimburse the other four attorney's fees for a specific matter. In Sukar, the indemnity provision required one party to reimburse, indemnify, and hold the other harmless from all liability, claim damage, and expenses including reasonable attorney's fees that may arise from performance under the agreement, etc. The 11th Circuit held, in looking at a strict construction application, that the indemnity clause must be construed to apply only to third-party claims and did not limit the attorney's fee to a prevailing party. There is an applicable state court case, McCarthy Brothers v. Tilbury, which is the closest factually that you can get. In that case, there was a subcontractor that sued a general contractor for money, and the general contractor counterclaimed against the sub and also sued the sub's performance bond surety. The surety ultimately entered a verdict in favor of the sub, and the trial court awarded the subcontractor and its surety attorney's fees. At the trial level, the surety raised the exact arguments that were raised before the district court and that are here, that entitlement to prevailing party attorney's fees based on the language of the subcontract to which the surety was not a party. In that case, in McCarthy, there actually was a prevailing party attorney's fee provision, which was incorporated into the bond. In this case, you have just an indemnity provision that does not have prevailing party. But in the McCarthy Brothers case, the first district court of appeal reversed the trial court and held that the subcontractor surety was not entitled to recover attorney's fees on a prevailing party basis because they were not a party to the subcontract. Even though that incorporation by reference argument had been made in that case. The performance bond there incorporate the subcontract? It did. Okay. So that argument was raised in the first district court of appeal squarely rejected it. And additionally, they specifically noted that parties not in privity, including the subcontractor surety, cannot benefit from the reciprocity provision of section 57-105. I understand this issue is present in the DCA in a number of pending cases. Is that correct? I'm not aware of that. Why couldn't we avoid having to construe 57-105, this contract, all of these issues by simply saying in this particular factual circumstance, the surety basically had the bond declared null and void for failure to give notice and therefore doesn't step into the shoes of the subcontractor here. Can we just decide this case on that very narrow principle giving the factual situation? To me, the surety said, I have no liability. My bond's null and void. I'm getting out of this thing. I'm over here. I have no liability. I don't know how, when you didn't perform under the bond or under the subcontract, you can take benefit of any contractual provision. It just seems a threshold, simple issue to me. You have two ways in your argument. Could we go that way and not get into how we construe 57-105 or all of this indemnification agreement? I have to compare it to the one in McArthur where they had the same language. This one's a little broader than some of them I've seen. You could, and you have two different ways to accomplish this. We could do that and not get into all of this other business. Right. You could, which is what? What would be the best Florida case for they don't step in the shoes of the subcontractor here? That would be McCarthy Brothers that looked exactly at this particular issue with a subcontractor performance bond, which is a statement of applicable law and similar to the facts. And in that case, they actually had a prevailing party attorney's fee. In this case, you have an indemnity provision. Okay. McArthur Brothers, is that the same thing as McArthur v. Tilbury? Yes, Your Honor. McCarthy Brothers versus Tilbury construction. Oh, so it's still that case. Any other case? Well, the only other case that we've cited and rely on is the Sukar case from the 11th Circuit, but it didn't deal specifically with construction-related bonds. In addition, Your Honor, there are cases that are cited on the other side from the 11th Circuit, ADF International, which has three differences. One is that the subcontract provision for indemnity had a failure to perform as opposed to arising from, so it was more of it in the sense of a breach of the contract. The second is that the indemnity provision had the language that it was not limit including but not limited to claims made by third parties, which the 11th Circuit panel in that case seized on and said, quote, in light of this sentence, it is impossible to construe the provision as being limited to third-party claims. So in that case, there's no tension with 57-105 because in the ADF v. Baker Mellon case, both parties to that agreement are in the dispute. In this case, you have the surety seeking to become a party when strict construction says you can't. Can I ask you a question about the paragraph on indemnification, the wording of it? I know that this is not an argument you're making, but I think opposing counsel actually has said that what I'm about to ask you is not a correct interpretation, but I'm not understanding exactly the way this is phrased. In the middle of this paragraph, it says, well, let me go through it. To the fullest extent permitted by law, subcontractors shall indemnify and hold harmless the contractor, its officers, directors, or employees, and the owner from and against all claims, damage, losses, and expenses, including but not limited to, and so it says including but not limited to there, attorneys' fees arising out of, in connection with, or resulting from the performance of work under the subcontract agreement. And here it says including, but it doesn't say including but not limited to. If caused in whole or in part by any act, omission, default, or contract performance, or non-performance by contractor or its officers, directors, agents, or employees, and then it says when any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property. Then it goes from there. So it seems like that language is limiting the applicability of the indemnification paragraph, even without getting into attorneys' fees, to situations where we have bodily injury, sickness, disease, or death, or injury to or destruction of tangible property. I am understanding your colleague to say, no, that's not right. It doesn't limit. It's not limited because it says including. Including can mean including but not limited to. But I note that above, in the parenthetical, it does say including but not limited to attorneys' fees, but uses the phrase including here without but not limited to. So my question to you is, what does when any such claim, damage, loss, or expense is attributable to bodily injury, et cetera, modify? The act, omission, default, or contract performance or non-performance by the contractor. That's what that modifies. Because in Florida, in order for one party to be indemnified for their own issues, they have to comply with a certain statute, which is cited at the bottom, 725.06. But to answer your question, the when limits the clause above it dealing with the contractor's mistakes, acts, et cetera. Interestingly, if you continue on, the last sentence of this indemnity clause makes pretty clear that it's just an indemnity clause because it says the parties mutually acknowledge that the amount of indemnity provided here under bears a reasonable commercial relationship, et cetera. Okay, so you're saying after the including, it's including even some of the contractor's conduct, not only the subcontractor's failure to perform. Correct. I see. So it's because it's got including if clause. They're just saying not only have you got to indemnify for the subcontractor's losses, the subcontractor cause, but also including the contractor. Right. Third party claims arising, et cetera. Okay. Thank you. It's a weird indemnification. Is this a common indemnification? Well, that's my very next point. In construction contracts, you would typically see an indemnity clause and you would see a separate prevailing party attorney. Right, right. This clause is a typical indemnity clause. What's missing in this case is a prevailing party or even a one-sided attorney's fee provision, which is the point that we've tried to raise. So it is normal to have this type of indemnity clause. It's not normal to try to stretch it to become what it's not, which is a bilateral or unilateral. I guess I'm still stuck at I don't know how you get to recover an attorney's fees under this indemnification, even if it included it. If you say I'm not liable, the subcontract can be incorporated in the bond, so what? He said I'm not liable under the same subcontract. I'm not liable under the bond. I went back. The argument was it's null and void. That, to me, under basic suretyship common law, it's always been the case. I've actually got some Georgia, I mean not Georgia, Florida cases that say you only can recover to the extent you've performed or paid. Right, right. They didn't perform or pay or do anything. They walked away. Right. In some of the 57-105 cases that we cited . . . That just seems like a very narrow holding we could make. Your honors have affirmed that the bond is null and void, so you could certainly under 57-105, if there's no bond and there's no contract, then there's no fees. It's over. Right. Okay. I'd like to use the last bits to just distinguish some of the cases that have been cited by my opponent. In the merchant's case, merchant's bonding, they were not dealing with an indemnity provision but a unilateral fee provision. In the Ajax paving versus Hardaway case, the only issue in that case is whether a voluntary dismissal makes the other party a prevailing party. The surety wasn't involved in seeking under that case. In the Gibbs case, it actually held contractual attorney's fees must be strictly construed and did not allow attorney's fees under the indemnity provision. They used a prevailing party provision. And finally, the amicus brief here makes two points. One is that indemnity without having a separate prevailing party's fee provision makes clear the intent of the parties. Just indemnity, not attorney's fees. The court should not rewrite what this provision to stretch it to my opponent's natural request. It would also have a chilling effect on the industry if all of a sudden what everybody thought was a clear indemnity provision now became . . . We've got a lot of concerns but chilling effect is not one of them. We've got to construe this. You know we've got to do what we've got to do. Thank you, Your Honor. Based on the contract terms. Got it. Thank you. Thank you. And you've reserved one minute. May it please the court. Edward Etcheverry for Etcheverry Harrison on behalf of International Fidelity Insurance Company. Sounds like I have my work cut out for me. But I will first address Judge Hall's issue about whether the surety can recover its attorney's fees having raised the lack of notice as a defense . . . All right. The bond that incorporated the subcontract. It incorporates the subcontract. We have no liability. We have no contractual obligation here at all. I understand the bond incorporates the subcontract. We have no obligation under the subcontract, no obligation under the bond. Help me how I get to . . . You can go and take benefit of a provision in the subcontract. No, I think that's a fair question. I think the answer is . . . Do you do a lot of construction stuff? Is this a lot of what you do for Fidelity? Your Honor, this is all I do. Yeah, so you tell me. Surety ship land is what I do for a living. That's what most surety lawyers do. I've seen some of your old stuff here. Yes, I know. That's what I did ten years. That's why I have this bond. I know, and I was hoping that you were on this panel, Your Honor. Yeah, I know you really were. I don't know if I feel the same way right now, but . . . Let me address the point, which is . . . Tell me the answer. This is actually addressed in the Kenco decision, which is a decision that was pulled out, I think, two or three months ago from Washington. In that case, and I do apologize. I'm going to have to read from the case briefly. Kenco? Kenco, it was a supplemental authority that was filed, Your Honor. Well, that's the state of Washington case. It's a good case, Your Honor. Yeah, right. Well, it's wrong, too. I read it, but anyway. The Kenco case addresses two points. One, whether the surety is a party to the subcontract. By the way, I'll address that later, but that's an absurd position that the surety would not be part of the subcontract, given that they've demanded the bond and incorporated the bond and so forth. But as it relates to your issue, Your Honor, this court specifically said, to the extent that surety was defending its action within the terms of the surety bond, which is, i.e., lack of notice, we don't cover you because you're out there performing. The surety was acting in the shoes of its principal under the subcontract. Therefore, the surety is entitled to fees under its surety bond with a principal, which itself incorporated the terms of the subcontract. The significance is this, Your Honor. The surety raised the defenses of its principal, the lack of notice. It raised, actually, two issues. It went from the lack of a three-day cure notice in the subcontract. Again, you've got to underscore that the three-day notice was under the subcontract. I was on that panel. It had two defenses. One, lack of notice under the subcontract and lack of notice in the bond. Correct. There were two defenses. Right, and this court seized on the three-day notice, and it said, basically— I think they relied on both of them. It ultimately does, but it's clear if you read the opinion. I don't know if you wrote it or if the other panelist wrote it, but it's clear that the linchpin of the decision was based on a lack of a three-day cure notice, and then that kind of permeates to the notice that's required under the bond. So you have the first cure notice requirement, and then, yes, as a follow-on, you have the other notice that was required under the bond. But this court found that the three-day cure notice was the significant factor. What makes this even more relevant is that based on this court's decision, CPM in its state court litigation with AMJV went out and got a summary judgment on liability under res judicata principles in light of this court's findings. So what we have is a surety raising the defenses of CPM prevailing in this court, and then its principle running down to state court to say, look what the surety did for us in federal court. We get a summary judgment on liability as a result of that. We have factually and legally stepped into the shoes and prevailed on behalf of CPM in this litigation. And so to the extent that we've done that good work— Do we have all that in this record? Yes, Your Honor. We have about the state court litigation? We do, because I filed a supplemental authority on the motion for summary judgment and its moving papers. Let me go back to Florida law, because I've got cases, Transamerica v. Barnett Bank. Are you familiar with that? Of course. Okay. And home insurance versus Larkin, and I thought you were going to go— I was an associate in that case, Your Honor. Okay, and GenCorp versus Fireman's Fund, another big surety, and they all say a surety who performs or pays steps in the shoes of the obligee to the extent of performance or payment. Your Honor, this is Surety Ship 101. Yeah, that's what I'm— If I may. Yeah, that's what I'm— Those are situations involving equitable subrogation principles. Right. A surety is not coming to this court trumping or championing its equitable subrogation rights. We understand that under equitable subrogation, there has to be—the surety has to perform. Well, as Kenko said, when a surety denies liability like it is now, it's still performing under the bond. It is saying there's no coverage under the bond based on the lack of cure notice under the subcontract. So we don't have to rely on equitable subrogation principles. It is sufficient for this—for the surety to— All right, let's try this one. Merchants bonding. Are you familiar with merchants bonding? Florida case explaining that if a surety prevails on a defense applicable to it, such as no liability under the bond, then the surety status says to the principal vanishes along with any right to claim under the principles contract with the obligee. What do I do with that one? In fact, we cited this case, Your Honor, because it stands for the proposition that if the surety would have prevailed under the principal's defenses, it would be entitled to attorney's fees. Look at that case closely because it basically said in that case— Did they award attorney's fees to the surety then? No, Your Honor, because there was no prevailing party. Basically, this was a construction dispute where they had competing claims, and ultimately the court said, you know what, you both are right. You both breached the contract. We're not paying anyone anything. And then in dicta, the court goes on to say— But I thought the surety prevailed on the defense there, and so there was no liability at all under the bond. That was right? True, but the court basically said we're not going to award attorney's fees to any party, GC, sub, or surety, because we are not determining that there's a prevailing party in the underlying lawsuit. And the court then, of course, the surety said, wait a minute. I'm entitled to attorney's fees. And what the court said, and it was very clear, it says— And so that one even had a prevailing party agreement, attorney's fees, and they didn't give any attorney's fees. Right, but what the court said is that if the surety would have prevailed on the principal's defenses, then it would have been entitled to fees. And that's what I'm saying here. We have prevailed on CPM's defenses. We showed that there was a wrongful termination arising out of their failure to give notice under the subcontract, and CPM has gone out and gotten a summary judgment on liability based on the surety's work. In other words, if I had CPM at trial or on that motion for summary judgment— Did CPM recover attorney's fees? No, it's pending in state court, and those are issues I can't get into because the court refused to grant our motion for judicial notice on those pleadings. Okay, so that goes back to my earlier question. Are those pleadings in the record in this case then? Your Honor, with all candor, we moved to have those pleadings submitted to the court. We filed a motion for— That goes back to my first—the state court pleadings that you're talking about. Yes. And the district court denied it? No, Your Honor, it's pending. But the point, if I may— You mean the district court never ruled upon it? This is the state court. The state court has not gotten to that issue. But what's clear about those pleadings is that AMJV sought attorney's fees under that same contract, Section 9.5. So if they're seeking attorney's fees in state court using the same indemnity provision, how can they come into this court and say, wait a minute, we're not entitled to fees under the indemnity provision? I urge this court to look at the state court proceedings and our motion for judicial notice because it is crystal clear that AMJV is filing suits against third parties invoking the same provision that they're seeking attorney's fees—or trying to preclude us from seeking attorney's fees. I'm sorry, you've totally confused me. The motion for judicial notice was filed in this case? Yes, Your Honor. And the district court still hasn't ruled on it? No, no, I apologize. Your—no, no. It was filed on the appeal. We denied it. Oh, we denied it. Yes, we denied it. I'm not sure on the basis. The only point I'm trying to make is— We probably denied it because it wasn't the district court. You hadn't timely made it in the district court. We typically limit the record to what the district court considered. I understand, I understand. But what's before you now is the motion for summary judgment that is part of the state court record. And if you look at the pleadings in those cases, you will notice that AMJV filed in that case against CPM its complaint that had an attorney's fees provision—attorney's fees request based on Section 9.5 of the subcontract. And they're walking into this court now saying that they're not entitled to it. They can't have it both ways. They're seeking it in state court and now they're telling us that we can't seek it here? Who is they? AMJV, I'm sorry, Your Honor. Who? AMJV. Okay. The—the— I thought you were talking about CPM. No, no, no. This is real simple. AMJV in state court has filed several pleadings seeking to recover attorney's fees under this indemnification provision. Attorney's fees stemming from what specifically? From the breaches of—of contracts in the CPM state court litigation. Attorney's fees that they incurred in which litigation? In—in—in that—in the state court litigation. They filed their complaint saying we're entitled to recover attorney's fees under Section 9.5. What are they suing and what are you talking about? The state court litigation. There's—there's two cases. There's one in federal court which is the DEC action that we're—we're involved in. And AMJV filed in—in state court a claim against CPM, our principal. In that case, AMJV is saying— Sub. Easier for me if you say subs, generals, insurities. Okay. So you have the GC suing in state court the subcontractor, our principal, and asking— Right. The fees that were incurred but where were the fees incurred? The litigation fees. The litigation—the fees to be incurred in the state court litigation. Between CPM and— AMJV. And nobody else. Well, no, that case is still pending. And the surety's not a party to that case. I am sorry? The surety, you're not a party to the case. No, no, we're—we're not a party to that case. You're not a party, so the fees there are for that contract litigation. Right. So AMJV is saying I'm entitled to recover attorney's fees under the same indemnification provision that they're telling us we can't recover fees for. Great, but I'm—I'm sorry. That's okay, Your Honor. The fees—the attorney fees that they're trying to recover from CPM. Mm-hmm. Litigation fees in that pending state court litigation. In the state court litigation against CPM and anybody else. Nope, just against CPM. And just to be clear, the litigation against CPM is what? Seeking— Resulting from the same fax—the same transaction. I thought that because notice wasn't given because they went in and brought in their own new sub, that they're stuck. They didn't—they didn't allow the cure, so what are they after the sub for now? They filed two actions simultaneously. One is a deck action against the surety and they counterclaimed against the surety in the federal court action. At the same time, they brought an action against CPM for breach of contract. So you have two tracks. And in the state court action against CPM, they're entitled to attorney's fees. So they're collateral estoppel now at this point? We got res judicata. They got a— That one sounds like such a mess it's not going to help as much. You're saying it's some sort of judicial admission that they've made that they're stuck. That was our position that we took in our motion for—our motion on judicial notice. Has there been judgment entered in that state court action? I think you're telling us it was. There was a summary judgment on liability. The issue of—there's two counts in that action. There's the wrongful termination. The state court affirmed—the state court granted motion for summary judgment on liability as it relates to the wrongful termination. Count two is for a foreclosure of a claim of lien. So that court, the state court came, relied on this court's ruling in AmeriCarib. So CPM prevailed there? Prevailed as to liability, yes, on the wrongful termination action. I'm sure that Mr. Chavez will tell you that he intends to rewrite the world and change the rulings, but it is what it is. Leaving aside all of that, leaving aside Judge Cole's issue with you and leaving aside whatever inconsistent statements they made in the state litigation, to me, I look at 9.5, the indemnification provision you're talking about, and our case law and Florida case law, and it seems to me that's strictly a provision that's looking to a situation where a third party is suing the sub for the sub's deficient word. And in that particular scenario, then you all come in as the surety. You may defend it. And the general says, look, I'm out. Even if I was a little bit negligent, I'm out. It's all on you. And best I can tell, our case law says this only talks about third party claims against the sub. We have something different here. We do. And the something different here we have goes to different parts of the contract,  Those provisions are what we're dealing with here where the sub didn't do something, bailed on you, they didn't give three days' notice. All of that's there. There's no attorney fee provision there. If there's no attorney fee provision there, why are we reaching back to another clause which seems to relate totally to third party claims? If I may walk you through the indemnity provisions so I can kind of explain to you our version of how the provision has to deal with. In fact, if you can go to the amicus brief in one of the footnotes, very telling, they quote and say this is a standard indemnity clause. And they lay it out in a footnote. I want you to compare the footnote version of what they say is a traditional indemnity clause to what we have in this case. They're diametrically opposed. If you look at. Whatever. I'm going to forget my question if you don't. No, no, no.  I'm going to get to it because I'm going to walk you through the indemnity. If you allow me the time, I'll walk you through the indemnity provision and how it cuts. And then I'm going to distinguish briefly the cases that they cite because I don't think that they're applicable. You start off with a broad coverage. And I think Judge Rosenbaum, I think you had the including language and you had a hang up there. The first part of this indemnity agreement is the broad coverage. And it's clear and unequivocal. And it's the part that deals with claims arising or in connection or resulting from the performance of the work under the subcontract agreement. I'll tell you. I'll ask you to look at three cases. That's the broad coverage. Three Florida cases that say that broad coverage is good enough. Just walk us through the language. Judge Carnes is trying to get you to walk through the language. Correct, correct. To the fullest extent, go to the language of the indemnification. And she said, why is this not a third party claim? And clearly the third party claims that the third party sues the general and the subcontractor. I mean, if they just sued the subcontractor, the general didn't care. So walk us through this. How does this get to be a first party claim between the sub and the contractor? The first provision is the broad coverage. The broad coverage encompasses everything that deals with the performance of the subcontract, i.e., the breach or the failure to perform the subcontract. So that's the broad coverage. Without hesitating because I'm interrupting and you're about to get going, but your adversary says all that means is we go back to the statute at the last sentence. No, no. I'm going to walk you through the entire process. Sorry to interrupt you. No worries. But I will say that as to that first section, look at ADF, Cone, and AJAX.  It's ADF, Cone, and AJAX. All right. Now you go into the including language that Judge Rosenbaum raised. This says, and the purpose of this including section says, including if caused in whole or in part by any acts or omissions defaulted to the contractor or non-performance by the contractor, blah, blah, blah, when any such claims are basically third party claims. Okay. So this is known in the industry as a coverage for wrongful acts caused by the indemnity, your AMJV, resulting on third party claims. So this is your third party claim provision. The fact that it references including means that the language above must be broader than the subset. You have broad coverage and then you have a subset that deals with third party claims. In fact, the next sentence beyond that is an exclusion to that subset, which basically deals with we're not going to cover AMJVs, gross negligence, or intentional acts. So you have broad coverage. You've got the subset for the third party. Let's get to a specific question here. You're trying to get me back to the point it's not just a third party claim. It could be a claim between the sub and the general. That's what you're trying to get me to. Based on the broad language above, yes. All right. So let's have a real scenario. Let's say there is a claim between the sub and the general. The sub says, hey, you're not paying me enough for my work, or you don't like their work. You say it wasn't good enough to pay for. So there's a claim, and you go to court, and it turns out the sub wins. The sub's work was good. The sub's work wasn't paid. Under this provision now, the sub has to indemnify you and pay your own judgment and pay the attorney's fees when it was the winning party, if this is not limited to a third party claim, right? No, Your Honor. That's the facts of ADM. Just tell me how, under your interpretation, that wouldn't be so. You lose. The general loses. The sub wins because the sub did right. Or the general wins. I've got it wrong. The general wins because the sub did something wrong. The general wins. Explain to me how it's going to work. You're trying to get into the century, the absurd conclusion that the indemnity can lose and yet prevail on attorney's fees. And that's how we distinguish all of their cases. You look at Century. You look at Penthouse. You look at SUCCAR, BSD, and RFM. The five cases that they rely on are wrongful acts leading to third party claims. If I may, just briefly. Well, I mean, you're kind of over and I want you to be able to finish answering Judge Karnes' questions, but let's not get into new areas. It's not new areas. Each of those cases that they rely on are wrongful act cases. The fact pattern that we have here involves absolutely no wrongful acts leading to third party claims. That's why the district court said, I don't have to deal with the including language down below because it's not applicable to the facts of this case. And I would agree with my colleague if this case involved wrongful acts leading to third party claims. And then there's basically the 11th Circuit has two lines of cases. You have the line of cases that deal with wrongful acts of third parties. And they've cited it to SUCCAR, BSD, and whatnot. But the other line of cases is where there's no fact pattern dealing with wrongful acts. Except that it seems to me that, and, you know, granted BVS and SUCCAR are unpublished so they're not precedential. But even so, it doesn't seem to me that those cases are decided necessarily on the principle that there were wrongful acts. It seems to me like they're decided on the principle that we're talking about an indemnification clause is usually intended to deal with third parties and third parties only. And that is different from a prevailing parties' attorneys' fees clause. Of course. Although there can be an exception to that. But it just has to be clear. It has to be, you know, clear. I can't remember the exact phrase I'm going to use. Very unequivocal. And I'm with you 100%. When you look at the indemnity agreements in those cases, it doesn't have the broad coverage. Our indemnity provision has the broad coverage that deals specifically with the issue in the case. The breach of the performance of the subcontract. That's ADF, AJAX, and Cone. We have that broader language. AJAX just assumes that the – I agree. I don't see how that helps us. I'll throw AJAX to the side. It's a nice case for us because it has the identical language. And ADF, it seems to me, does not actually make the point because even though that's what the district court may have held on appeal, we noted that – The additional sentence. That there was a part of the indemnification clause that the district court hadn't addressed. And that sentence said the foregoing obligations of the subcontractor shall include but are not limited to indemnifying, defending, and holding harmless from claims made by third parties against any of the indemnified parties. So we said that the second sentence clearly says that indemnification is not limited to third party claims. But that doesn't seem to be the case here. I'm with you 100% on this one as well. If you look at that case, it said it made it impossible. That language, that additional language made it impossible to have any other construction. That sentence is not necessary to make it clear and unambiguous because if you look at – I agree. You don't have to use that sentence to make it clear and unambiguous. But in the facts in that case, that was what made it clear and unambiguous. Well, the first sentence was good enough for the district court. And if you look at the case that it relies on, it's the Cone decision. And the Cone decision has the identical language that we have. So this court relied on Cone to say that that first sentence was good enough. And that's what we have here. That sentence is good enough. And if you want to go one step further, I would say that once we use the word including and we have the wrongful acts causing third-party language after the including, that's the equivalent of that sentence in ADF. In ADF, it said including but not limited to third-party claims. Here we're saying including, which creates a subset of a broader coverage. So I think that my language is equivalent to the language in ADF in that second sentence. One quick question. Yes. I have to elaborate. If you are going to lose on this appeal, either under Judge Hall's theory that you've been exploring or under the theory Judge Rosenbaum was talking about under this clause just doesn't apply, which one is of most danger or the one that would concern you most to lose on in terms of going forward? I'm sorry, Your Honor. I did not follow that. If I'm going to lose on Hall versus . . . She's asking you to pick your poison. Thank you. Well, I think to be fair, I think this presents a threshold. The threshold issue you have to address first, and that's does 9.5 cover indemnity, fees for intramural disputes. That's a threshold. You've got to look at 9.5. You've got to make a determination. Is this good enough? I say it's the broad language. It's good enough. Why don't we have to? Why can't we just assume it and go with Judge Hall's theory? I think that's what Judge Barnes is asking. I think if you're intellectually honest before you get to the issue . . . I'm not asking about . . . I like to think we're intellectually honest. When you give this opinion and you go to your clients like, dang, this one is really . . . Well, the . . . Which one do you prefer to lose on? Assuming . . . I'm not going to say you're . . . No, no, and I appreciate that. Given the opportunity to figure out what sort I'm going to take. My point is this. You can address this case on the indemnity side. I'm not going to answer my question. No, no, I will. No, no, I definitely will. Answer it now. Which one . . . I prefer to lose on the contractual indemnity provision as opposed to the surety provision. I thought. Okay. To wrap things up unless you have any further questions. Judge Rosen? That's it. Thank you. I have one more. I'm looking at merchant's bonding. You just said, oh, that's all about equitable subrogation. I don't see the word equitable subrogation. No, merchant's is not equitable subrogation. Because they're construing contracts. No, no, of course not. Merchant's is an incorporation by reference. There was no equitable subrogation. They had incorporated the subcontract by reference, right? Agreed. To wrap everything up. Okay, wait a minute. That's what . . . Let me tell you. Florida law may be messed up, but we apply Florida law, right? True, but in this case, I think Florida law will get you there. Okay, but merchant says, had it prevailed on an offense applicable to it in its capacity of surety, such as no liability bond, then its surety status would have vanished along with any right to claim under the principal's contract. Right. Okay. But here we have both. Here we have . . . But that's the problem here. They're just saying it's null and void. Kind of what we said in our first opinion. And so I'll . . . Their status as to claim under the principal's contract . . . This is an equitable issue, Your Honor. . . . vanishes. This is an equitable issue insofar as this. You're looking at me as a surety. Look at me for a second as CPM because I stand in the shoes of CPM. So for purposes of this case, in this appeal, we are two. So if CPM would have prevailed on its lack of notice, the surety, which stands up just above it, says, me too. Right. If in this federal court . . . But that's not answering whether you can then get affirmative recovery. Well, no. But the merchant's case talks about two things. And here what we have is a combination. It talks about whether you prevail on your principal's defenses or you prevail on surety defenses. Here we prevail on both. And the fact that we prevailed on both entitles us to fees. Thank you very much. One last point. If you are going to reverse . . . I'm not saying we're going to reverse this. We haven't talked . . . No, no, no. I just got to remind the court that we have an offer of judgment. So we have to remand. So we have an offer of judgment issue that needs to be . . . I don't want to lose my opportunity to run back to state court and say, I got an offer of judgment and we're entitled to fees on that. Okay. Thank you. Thank you. Okay. Working backwards, the indemnity provision does not unambiguously provide a clear agreement to reimburse the other for attorney's fees. So that's the first point. What do you say about your colleague's argument that because there's a subset, it's like the phrase or the clause that was at issue in ADF? It's not. It's different because the language in ADF was failure to perform. So the subset had no issue. The 11th Circuit Panel on ADF seized on that one sentence including, but not limited to. And they said, but not limited to. That's what we're going to rely on. And the Sukar case, which came later in time, pointed out to the absurdity of the position I think that Judge Karnes raised, which is, hey, if this indemnity clause is enforced the way you're arguing, that means the attorney's fees that CPM incurs and the attorney's fees that AMJV incurs, CPM will be responsible for. And that's not, under the Sukar and the cases cited by that, that's not the approach under Florida law. The second thing is that, as Judge Holt pointed out, the bond is deemed null and void, and everything that is sought to be incorporated in the basis for attorney's fees would be null and void. Some of the cases that we cited included mortgage cases where non-parties said, filed lawsuits and so forth. And then it was determined that they were non-parties to the contract. And as a result, they were not allowed to use the 57-105 reciprocity. The third point is that in the state court cases, which are not part of the record because they weren't considered before the district court and the court properly denied judicial notice, there has been no entry of entitlement. There's not been a state court adjudication that 9.5 operates as a prevailing party attorney's fee. In those other cases which are not in this record, those are based on third-party claims. In this case, at the district court level, in the counterclaim that we raised, we did not cite 9.5 as a basis for attorney's fees. That is in the record. So we would encourage Your Honor to reverse the district court unless you have any other questions. All right, thank you. Thank you, Your Honor. We'll be in recess until tomorrow.